UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
In re:

HERMAN JACOBS, VICTOR JACOBS and                    Chapter 7
JACOB JACOBS,
                                                    Case No. 03-84455-ess
            Debtors.                                (Jointly Administered)
--------------------------------------------------------------x
ALLAN B. MENDELSOHN as Chapter 7
Trustee of HERMAN JACOBS, VICTOR
JACOBS and JACOB JACOBS,                            Adv. Pro. No. 05-8813-ess

            Plaintiff,

        -against-

EVA JACOBOWITZ a/k/a EVA
SILBERSTEIN and CHANIE JACOBOWITZ,

            Defendants.
--------------------------------------------------------------x

## MEMORANDUM DECISION ON CHAPTER 7
## TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

*Appearances:*

David A. Blansky, Esq.                    Scott A. Krinsky, Esq.
LaMonica Herbst & Maniscalco, LLP         Backenroth, Frankel & Krinsky, LLP
Attorneys for the Chapter 7 Trustee       Attorneys for the Defendants
3305 Jerusalem Avenue                     489 Fifth Avenue
Wantagh, NY 11793                         New York, NY 10017

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced by the filing of a complaint (the "Complaint") by Allan B. Mendelsohn as Chapter 7 Trustee (the "Trustee") of the estates of Herman Jacobs, Victor Jacobs a/k/a Victor Jacobowitz ("Victor Jacobs"), and Jacob Jacobs (collectively, the "Debtors"), against defendants Eva Jacobowitz a/k/a Eva Silberstein ("Eva Jacobowitz") and Chanie Jacobowitz (collectively, the "Defendants").

Before the Court is the Trustee's motion for summary judgment on the First through Ninth and Nineteenth through Twenty-Fourth Claims for Relief, which seek to avoid and recover certain alleged fraudulent transfers made by Victor Jacobs to his wife Eva Jacobowitz under New York's Debtor and Creditor Law ("DCL") Sections 273, 274, 275, and 276, and Bankruptcy Code Sections 548(a)(1)(A) and 548(a)(1)(B); the turnover and an accounting of the alleged fraudulent transfers under Bankruptcy Code Sections 541 and 542; and an accounting.[1]

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). The following are the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7052.

## Procedural History

On September 6, 2005, the Trustee filed the Complaint against the Defendants. Adv. Pro. Docket No. 1. In the Complaint, the Trustee seeks to avoid and recover alleged fraudulent

---

[1] The Trustee does not argue the Motion for Summary Judgment as to the Second Claim for Relief, which seeks an accounting. Separately, the Trustee seeks an accounting in connection with the First and Nineteenth Claims for Relief. *See* pp. 38-39, 44-45, *infra*. As a result, the Court does not address the Second Claim for Relief.

transfers of money made by Victor Jacobs and Jacob Jacobs to the Defendants. *Id.* The Defendants filed an Answer to the Complaint on October 31, 2005, in which they deny a majority of the Trustee's allegations and assert certain affirmative defenses. Adv. Pro. Docket No. 5.

On February 8, 2008, the Trustee filed a motion under Rule 37 of the Federal Rules of Civil Procedure for an order striking the Answer as it relates to Chanie Jacobowitz and entering judgment against her for the amount set forth in the Complaint, and under Rule 56 of the Federal Rules of Civil Procedure for an order granting summary judgment against Eva Jacobowitz (the "Trustee's Motion for Summary Judgment"). The Trustee's Motion for Summary Judgment is supported by the affirmation of David A. Blansky, attorney for the Trustee (the "Blansky Affirm."). The Trustee also filed Plaintiff's Statement of Material Facts Pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Plaintiff's Statement of Material Facts"), in which he states that there are no issues of material fact to be tried. Adv. Pro. Docket No. 22.

On March 31, 2008, Eva Jacobowitz filed an objection to the portion of the Trustee's Motion for Summary Judgment seeking summary judgment against her (the "Eva Jacobowitz Objection"). Adv. Pro. Docket No. 25. The Eva Jacobowitz Objection is not sworn to or affirmed by Eva Jacobowitz, but is signed by Abraham Backenroth on behalf of Backenroth, Frankel & Krinsky, LLP, the attorneys for the Defendants. Eva Jacobowitz did not file a response to the Plaintiff's Statement of Material Facts. On April 15, 2008, the Trustee filed a Reply Affirmation by David A. Blansky in further support of the Trustee's Motion for Summary Judgment (the "Blansky Reply Affirm."). Adv. Pro. Docket No. 26.

No response to the Trustee's Motion for Summary Judgment was filed by or on behalf of Chanie Jacobowitz.

A hearing on the Trustee's Motion for Summary Judgment was held on April 17, 2008, at which counsel for the Trustee and counsel for the Defendants appeared and were heard.  As reflected in the record, Chanie Jacobowitz, by her attorney, stated that she does not oppose the relief requested by the Trustee in the Trustee's Motion for Summary Judgment.  The Trustee's Motion for Summary Judgment was granted as to Chanie Jacobowitz, and that portion of the Trustee's Motion for Summary Judgment seeking summary judgment against Eva Jacobowitz was adjourned to May 28, 2008.  Adv. Pro. Docket Entry dated April 17, 2008.

On May 8, 2008, an Order and Judgment was entered by the Court which, among other things, granted judgment to the Trustee against Chanie Jacobowitz for the relief sought in the Tenth through Eighteenth Claims for Relief in the Complaint.  Adv. Pro. Docket No. 30.

The Trustee's Motion for Summary Judgment against Eva Jacobowitz came before the Court on May 28, 2008, at which counsel for the Trustee and counsel for Eva Jacobowitz appeared and were heard.  After consideration of the submissions, the arguments of counsel, and the record before the Court, for the reasons set forth below, the Trustee's Motion for Summary Judgment is granted in part and denied in part.

### Background

On September 4, 2001, Victor Jacobs, Herman Jacobs, and Jacob Jacobs executed a $10 million personal guaranty in favor of Congress Financial Corporation ("Congress") and certain other lenders (the "Limited Guarantee").  Plaintiff's Statement of Material Facts,  Exh. O (Limited Guarantee dated September 4, 2001).  On April 9, 2003, involuntary Chapter 11

petitions were filed against Allou Distributors, Inc. and certain of its affiliates ("Allou") by Congress and LaSalle Business Credit, Inc.  Case No. 03-82321 (*In re Allou Distributors, Inc., et al.*), Docket No. 1.  By letter dated April 14, 2003, Congress demanded payment from the Debtors pursuant to the Limited Guarantee.  Plaintiff's Statement of Material Facts, Exh. P (Letter dated April 14, 2003, from Congress to the Debtors).  On April 15, 2003, the Debtors confessed judgment in the amount of $3.2 million to another entity, Eurofactors International, and that judgment was recorded in the Office of the County Clerk of Kings County (the "Confession of Judgment").  Plaintiff's Statement of Material Facts, Exh. Q (Affidavit of Confession of Judgment by Jacob Jacobowitz, Herman Jacobowitz, and Victor Jacobowitz, sworn to on April 15, 2003).

The Debtors' Bankruptcy Cases

On June 30, 2003, involuntary Chapter 7 petitions were filed against each of the Debtors by Congress and two other lenders.  Case No. 03-84455 (*In re Herman Jacobs*), Docket No. 1; Case No. 03-84456 (*In re Victor Jacobs*), Docket No. 1; Case No. 03-84457 (*In re Jacob Jacobs*), Docket No. 1.  On July 11, 2003, Congress filed a motion under Bankruptcy Code Section 303(g) for an expedited hearing for the appointment of an interim trustee to preserve and protect the assets of the Debtors' estates ("Congress' Motion for Appointment of Interim Trustee").  Case No. 03-84455, Docket Nos. 4, 5, 7.  The Debtors challenged the involuntary petitions filed against them, and objected to Congress' Motion for Appointment of Interim Trustee.  Case No. 03-84455, Docket Nos. 10, 12, 13.  After hearings before former Judge Melanie L. Cyganowski, the Court entered an order dated August 7, 2003, directing the United States Trustee to appoint an interim Chapter 7 trustee in the Debtors' bankruptcy cases.  Case

No. 03-84455, Docket No. 37.

On August 12, 2003, Victor Jacobs, Herman Jacobs, Jacob Jacobs, and others, were arrested for, among other charges, bank fraud.  Plaintiff's Statement of Material Facts,  Exh. AA (U.S. District Court, Eastern District of New York, Criminal Docket for Case No. 03-MJ-01254, Docket Entry dated August 12, 2003).

On September 4, 2003, the Debtors' Chapter 7 cases were directed to be jointly administered and procedurally consolidated by Order Directing Joint Administration of Chapter 7 Cases.  Case No. 03-84455 (*In re Herman Jacobs*), Docket No. 63; Case No. 03-84456 (*In re Victor Jacobs*), Docket No. 59; Case No. 03-84457 (*In re Jacob Jacobs*), Docket No. 59.  Orders for relief were entered in each of the Debtors' cases on September 9, 2003.  Case No. 03-84455 (*In re Herman Jacobs*), Docket No. 70; Case No. 03-84456 (*In re Victor Jacobs*), Docket No. 62; Case No. 03-84457 (*In re Jacob Jacobs*), Docket No. 62.  On September 10, 2003, Allan B. Mendelsohn was appointed as the permanent Chapter 7 trustee in these cases.  Case No. 03-84455, Docket No. 72.

On June 9, 2004, an indictment was filed against Herman Jacobs, Victor Jacobs, Jacob Jacobs, and others.  Plaintiff's Statement of Material Facts  Exh. BB (U.S. District Court, Eastern District of New York, Criminal Docket for Case No. 04-CR-00558-JG, Docket Entry dated June 9, 2004).  The Debtors were indicted on charges including bank fraud, violations of rules and regulations of the Securities and Exchange Commission, and bribery of a public official in connection with certain businesses of which they were officers, directors, and shareholders.  *Id.*

The Trustee states that "[d]uring the pendency of the criminal proceedings and the

Debtors' bankruptcy case, Victor [Jacobs] passed away." Blansky Reply Affirm. ¶ 30. The Trustee notes that "[s]ome years earlier [Victor Jacobs] had negotiated a plea bargain, but significant medical problems prevented him from entering his plea before his demise." *Id.*

On November 22, 2005, the United States Attorney filed a superseding information against Herman Jacobs. Plaintiff's Statement of Material Facts, Exh. CC (U.S. District Court, Eastern District of New York, Superseding Information). Herman Jacobs waived indictment and consented to be prosecuted by information. *Id.* On November 22, 2005, Herman Jacobs entered a guilty plea to Count One (Conspiracy to Commit Bank Fraud, Securities Fraud, and Mail Fraud), and Count Two (False SEC Filings). Plaintiff's Statement of Material Facts, Exh. DD (Criminal Case for Arraignment/Pleading), Exh. EE (November 22, 2005, Transcript of Criminal Cause for Guilty Plea).

Also on November 22, 2005, Jacob Jacobs pleaded guilty to Count Six of the indictment. Plaintiff's Statement of Material Facts, Exh. DD (Criminal Case for Arraignment/Pleading), Exh. EE (November 22, 2005, Transcript of Criminal Cause for Guilty Plea). In his plea allocution, Jacob Jacobs testified that as an officer and director of Allou:

> [he] signed the Form 10-K for Allou for the fiscal year ending March 31, 2002 . . .
> . When [he] signed it, [he] knew that it did not report that Allou had significant
> financial transactions with related parties . . . with companies owned and
> controlled by members of [his] family. [He] knew that the Form 10-K would be
> filed with the SEC and would be relied upon by investors. [He] also knew that
> the failure to report in the 10-K that Allou had significant transactions with
> related parties made the 10-K false and misleading as to a material matter. [He]
> was aware that the Form 10-Q was filed in February 2003 that [he] knew falsely
> inflated Allou's accounts receivable.

Plaintiff's Statement of Material Facts, Exh. EE (November 22, 2005, Transcript of Criminal Cause for Guilty Plea) at 32:7-25, 33:1-5.

On July 31, 2007, Herman Jacobs was sentenced to fifteen years of incarceration and three years of supervised release, and was ordered to pay $176,550,000, in restitution.  Plaintiff's Statement of Material Facts, Exh. FF (Sentencing Minutes for Herman Jacobs).  On that same day, Jacob Jacobs was sentenced to seven years of incarceration, and three years of supervised release, and was ordered to pay $30,000,000, in restitution.  Plaintiff's Statement of Material Facts, Exh. GG (Sentencing Minutes for Jacob Jacobs).

The Alleged Fraudulent Transfers to Eva Jacobowitz

*The GFI Transfer*

The Trustee alleges that Victor Jacobs made a fraudulent transfer of his property to Eva Jacobowitz in connection with the refinancing of real property located at 176 Penn Street, Brooklyn, NY (the "Penn Street Property").  Victor Jacobs was the sole fee owner of the Penn Street Property.  Plaintiff's Statement of Material Facts, Exh. A (Deed dated January 10, 1990 conveying the Penn Street Property to Victor Jacobs).  The Trustee alleges that Victor Jacobs, Eva Jacobowitz, and their family use the Penn Street Property as their principal residence. Complaint ¶ 21.  Eva Jacobowitz testified at her November 26, 2007, deposition that Victor Jacobs resided with her at the Penn Street Property until his death.  Plaintiff's Statement of Material Facts, Exh. Z (November 26, 2007, deposition transcript of Eva Jacobowitz at 5:16-21).

On May 9, 2003, Victor Jacobs engaged in a refinancing transaction with GFI Mortgage Bankers, Inc. ("GFI") in which he gave GFI a $735,000 thirty-year mortgage secured by the Penn Street Property (the "GFI Mortgage").  Plaintiff's Statement of Material Facts, Exh. B (Mortgage dated May 9, 2003).  As reflected in the Loan Settlement Statement, the closing of the GFI Mortgage was held on May 9, 2003.  Plaintiff's Statement of Material Facts, Exh. C (Loan

7

Settlement Statement dated May 9, 2003).  The Loan Settlement Statement shows that on May

14, 2003, $696,975.39, of the net proceeds were disbursed at Victor Jacobs' direction to an

account in the name of Eva Silberstein at European American Bank (the "GFI Transfer").

Plaintiff's Statement of Material Facts, Exh. C (Loan Settlement Statement dated May 9, 2003);

Exh. D (Wire Letter authorization dated May 14, 2003).

### *The $5,000 Transfer and the $20,000 Transfer*

The Trustee alleges that Victor Jacobs made a fraudulent transfer of his property to Eva

Jacobowitz by two checks payable to Eva Silberstein, the first dated November 26, 2000, in the

amount of $5,000, and the second dated October 15, 2001, in the amount of $20,000.  Complaint

¶¶ 49-55; Plaintiff's Statement of Material Facts, Exh. M (check no. 248 ($5,000)); Exh. N

(check no. 4456 ($20,000)).  The record reflects that the checks were drawn on an Amalgamated

Bank of New York account, that the names "Eva Jacobowitz" and "Victor Jacobowitz" appear

on the face of the checks, and that the checks bear the signature of Eva Jacobowitz.  Plaintiff's

Statement of Material Facts, Exh. M (check no. 248 ($5,000)); Exh. N (check no. 4456

($20,000)).

The Trustee alleges that Victor Jacobs did not receive fair consideration or reasonably

equivalent value in exchange for the GFI Transfer, the $5,000 Transfer, or the $20,000 Transfer.

Complaint ¶¶ 79-81.  The Trustee also alleges that the GFI Transfer, the $5,000 Transfer, and the

$20,000 Transfer were made to Eva Jacobowitz with actual intent to hinder, delay, and defraud

Victor Jacobs' creditors.  Complaint ¶¶ 69-72, 120-23.

## **Discussion**

## The Applicable Legal Standards

8

The Standard for Summary Judgment

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  And an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, 2008 WL 902184, at *4 (S.D.N.Y. 2008) (citing *Anderson*, 477 U.S. at 250 n.4).  If this burden is met, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation omitted).  "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *4 (S.D.N.Y. 2002) (citing *Anderson*, 477 U.S. at 249). *See Anderson*, 477 U.S. at 250 (finding that summary judgment is

9

appropriate only when "there can be but one reasonable conclusion as to the verdict").

In reviewing a motion for summary judgment, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). And where the plaintiff's claim must be established by clear and convincing evidence, as with the Trustee's Sixth, Eighth, and Twenty-Third Claims for Relief, then "the issue is whether, with all conflicts in the evidence resolved and all reasonable inferences drawn in favor of [the nonmoving party], the record contains sufficient evidence from which a reasonable jury could find actual fraud under the clear and convincing standard." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 374 (S.D.N.Y. 2003) (citing *Anderson*, 477 U.S. at 255).

The moving party bears a significant burden in establishing intent to defraud in the context of a motion for summary judgment. As the Second Circuit has observed, "[o]rdinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind." *Golden Budha Corp. v. Canadian Land Co. of America*, 931 F.2d 196, 201-02 (2d Cir. 1991). *See New York v. North Storonske Cooperage Co.,* 174 B.R. 366, 390 (N.D.N.Y. 1994) ("Summary judgment on a fraud claim of any kind is exceedingly rare due to the intent element, which, is almost always an issue of fact.").

At the same time, "it is also well-recognized that 'the summary judgment rule would be rendered sterile . . . if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion.'" *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 376 B.R. 390, 401 (Bankr. S.D.N.Y. 2007) (quoting *Meiri v. Dacon*, 759 F. 2d 989, 998

10

(2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985)).

<u>Recovery of a Fraudulent Transfer under New York's Debtor and Creditor Law</u>

Bankruptcy Code Section 544(b) authorizes the Trustee to avoid "any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). The "applicable law" upon which the Trustee relies is set forth in DCL Sections 273, 274, 275, and 276.

### *Fraudulent Transfer Under DCL Section 276 - Actual Fraud*

DCL Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. DEBT. & CRED. LAW § 276. "[I]t is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven." *In re MarketXT Holdings Corp.*, 376 B.R. at 403 (citing *Shapiro v. Wilgus*, 287 U.S. 348, 354 (1932)).

Under DCL Section 276, a transfer will be set aside as fraudulent regardless of the adequacy of the consideration given for the transfer where actual intent to hinder, delay, or defraud creditors is proven. *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994). "The burden of proving actual intent is on the party seeking to set aside the conveyance. . . . Such intent must be demonstrated by clear and convincing evidence." *MFS/Sun Lift Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934-35 (S.D.N.Y. 1995). And "[i]t is the intent of the transferor and not that of the transferee that is dispositive." *Securities Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *HBE Leasing*

11

*Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)). *See Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *46 (S.D.N.Y. 2000); *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 38 (Bankr. E.D.N.Y. 2006).  As the *Stratton Oakmont* court notes, "[t]he intent of the transferee only becomes relevant as an affirmative defense if the defendant is not the initial transferee."  *Stratton Oakmont*, 234 B.R. at 318 (citing *Golden Budha Corp.*, 931 F.2d at 201).

Actual fraudulent intent is rarely susceptible to direct evidence and may be inferred from the circumstances surrounding the transaction.  As the Second Circuit has explained:

> "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent."

*In re Sharp Int'l Corp.*, 403 F.3d at 56 (quoting *Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)).  *See In re MarketXT Holdings Corp.*, 376 B.R. at 405.

These badges of fraud include:

(1)     the lack or inadequacy of consideration;

(2)     the family, friendship or close associate relationship between the parties;

(3)     the retention of possession, benefit or use of the property in question;

(4)     the financial condition of the party sought to be charged both before and after the transaction in question;

(5)     the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)      the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

But this may not be the end of the inquiry.  Where the burden of showing actual

fraudulent intent is met, New York's Debtor and Creditor Law offers protection to an innocent

purchaser for value.  DCL Section 278(2) states:

> A purchaser who without actual fraudulent intent has given less than a fair
> consideration for the conveyance or obligation, may retain the property or
> obligation as security for repayment.

N.Y. DEBT. & CRED. LAW § 278(2).  An innocent purchaser must affirmatively show good faith

in order to take advantage of Section 278(2).  *Emmi v. Patane*, 128 Misc. 901, 904, 220 N.Y.S.

495, 498 (Sup. Ct. Onondaga Cty. 1927).

> <u>*Fraudulent Transfer Under DCL Sections 273, 274, and 275 - Constructive Fraud*</u>

DCL Sections 273,[2] 274,[3] and 275[4] provide that a transfer by a debtor is deemed constructively fraudulent if it is made without "fair consideration," and one of the following conditions is met:

> (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*In re Sharp Int'l Corp.*, 403 F.3d at 53.

To establish a claim for constructive fraud, a plaintiff must establish that the conveyance

---

[2]  DCL Section 273 provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. DEBT. & CRED. LAW § 273.

[3]  DCL Section 274 provides:

Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.

N.Y. DEBT. & CRED. LAW § 274.

[4]  DCL Section 275 provides:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. LAW § 275.

was not made for fair consideration.  Under New York law, fair consideration is given for

property:

> (a)    When in exchange for such property, . . . as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

> (b)    When such property, . . . is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, . . . .

N.Y. DEBT. & CRED. LAW § 272.

Under DCL Section 272, "fair consideration" has two components, "'the exchange of fair

value and good faith – and both are required.'"  *SEC v. Universal Express, Inc.*, 2008 WL

1944803, at \*5 (S.D.N.Y. 2008) (quoting *Lippe*, 249 F. Supp. 2d at 376-77).  The Second Circuit

has interpreted "good faith" as follows:

> [Where] a transferee has given equivalent value in exchange for the debtor's property, the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme.

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 2005).

And "[f]or purposes of § 272, the 'good faith' at issue is the good faith of the transferee,

as opposed to, in the case of actual fraud under § 276, the good faith of the transferor."  *Lippe*,

249 F. Supp. 2d at 377 (citing *HBE Leasing Corp.*, 61 F.3d at 1059 n.5).  *But see Sharp Int'l*

*Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 302 B.R. 760, 779 (E.D.N.Y.

2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005) ("[S]tate and federal courts in New York have differed

as to whose good faith matters, with some suggesting that both parties' good faith must be

established, and others contending that the good faith requirement applies to the transferee

alone." (citing cases)).

The burden of proving constructive fraud under the DCL is generally on the party

15

seeking to set aside the transfer, and that party must prove the elements set forth in DCL Section 273, 274, and 275 by a preponderance of the evidence. *Lippe*, 249 F. Supp. 2d at 376.

As several courts have found, transfers among family members raise special concerns, and receive different scrutiny. For example, in *United States v. Hansel*, 999 F. Supp. 694 (N.D.N.Y. 1998), the court observed that "[i]n cases of intra-family transfers where facts concerning the *nature* of the consideration are within the exclusive control of the transferee, . . . the defendant has the burden of proving the adequacy of consideration." *Hansel*, 999 F. Supp. at 699 (citing *McCombs*, 30 F.3d at 323). *See Gelbard v. Esses*, 96 A.D.2d 573, 576, 465 N.Y.S.2d 264, 268 (App. Div. 2d Dep't 1983) ("[W]here the creditor asserts that the transferees paid insufficient consideration and the evidentiary facts as to the nature and value of the consideration are within the transferees' control, the burden of coming forward with evidence disclosing the nature and value of the [consideration] and the fairness of the consideration . . . should be cast upon the transferees.").

As another court observed, "'courts view *intrafamily* transfers without any signs of tangible consideration as presumptively fraudulent.'" *United States v. Mazzeo*, 306 F. Supp. 2d 294, 311 (E.D.N.Y. 2004) (quoting *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999)).

Recovery of a Fraudulent Transfer under the Bankruptcy Code

*Bankruptcy Code Section 548(a)(1)(A) – Actual Fraud*

Like DCL Section 276, Bankruptcy Code Section 548(a)(1)(A) applies to transfers made with intent to deceive, but unlike DCL Section 276, Section 548(a)(1)(A) applies here only to

transfers made within one year of the filing of the petition.[5]

Section 548(a) provides:

(a)(1)   The trustee may avoid any transfer . . . of an interest of the debtor in
property, or any obligation . . . incurred by the debtor, that was made or
incurred on or within [one] year[] before the date of the filing of the
petition, if the debtor voluntarily or involuntarily

(A)      made such transfer or incurred such obligation with actual intent to
hinder, delay, or defraud any entity to which the debtor was or
became, on or after the date that such transfer was made or such
obligation was incurred, indebted; . . .

11 U.S.C. § 548(a)(1)(A).

The trustee has the burden of showing that the challenged transfer was made with actual

intent to hinder, delay, or defraud, and he or she must do so under the clear and convincing

standard. *Glinka v. Bank of Vermont (In re Kelton Motors, Inc.)*, 130 B.R. 170, 179 (Bankr. D.

Vt. 1991) (finding clear and convincing standard applies to Section 548(a)(1)(A) claims).

## *Bankruptcy Code Section 548(a)(1)(B) – Constructive Fraud*

Bankruptcy Code Section 548(a)(1)(B) provides for the recovery of a constructively

fraudulent transfer, and applies to transfers made within one year of the filing of the petition.

*See supra*, note 5.

Section 548(a)(1)(B) provides that a trustee may avoid a transfer of a debtor's interest in

property when the transfer was made within the year preceding the bankruptcy filing, and

---

[5]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")
increased the reachback period from one year to two years.  Bankruptcy Abuse Prevention and
Consumer Protection Act of 2005, Pub. L. No. 109-8, § 1402(1) (2005).  The two-year period
applies to cases commenced more than one year after the enactment of BAPCPA, that is, after
April 20, 2006.  *Id.*, § 1406(b)(2).  Victor Jacobs' bankruptcy case was filed in 2003, so the
applicable reachback period is one year.

conveyed the debtor's interest in property in exchange for less than "a reasonably equivalent value." 11 U.S.C. § 548(a)(1)(B)(i). To succeed on an avoidance claim, the trustee must also show that the transfer occurred when the debtor was insolvent or was rendered insolvent as a result of the transfer; when the debtor "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital"; or when the debtor intended to incur, or believed that he or she would incur, debts beyond his or her ability to pay them as they mature. 11 U.S.C. § 548(a)(1)(B)(ii).

The "concept of reasonably equivalent value unfortunately has not been defined in the [Bankruptcy] Code. . . . 'Congress left to the courts the obligation of marking the scope and meaning of [reasonably equivalent value].'" *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 148 (3d Cir. 1996) (quoting *Cooper v. Ashley Commc'ns, Inc. (In re Morris Commc'ns NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990)).

Section 548(d)(2) defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A). The "reasonably equivalent value" standard of Section 548(a)(1)(B) differs from the "fair consideration" standard under the DCL primarily in that it does not contain the good faith element. As noted by the court in *In re Reisner*, "[t]he determination of whether the debtor received reasonably equivalent value for his interest 'requires the court to compare what was given with what was received.'" *In re Reisner*, 357 B.R. at 211 (quoting *Coan v. Fleet Credit Card Servs., Inc. (In re Guerrera)*, 225 B.R. 32, 36 (Bankr. D. Conn. 1998)).

18

But a good faith purchaser is not left without recourse.  Under the Bankruptcy Code, an otherwise fraudulent transfer may not be set aside when the transferee is a good faith purchaser for value.  Bankruptcy Code Section 548(c) provides that a transferee "that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ."  11 U.S.C. § 548(c).  As noted by several courts, "[t]he transferee's 'good faith' and value given 'in exchange' is an affirmative defense under § 548(c) that the transferee must plead and prove."  *In re MarketXT Holdings Corp.,* 376 B.R. at 403 (citing cases).

<u>Eva Jacobowitz's Assertion of the Fifth Amendment</u>

As a threshold matter, the Trustee argues that the Court should draw an adverse inference against Eva Jacobowitz based on her assertion of her Fifth Amendment privilege at her deposition on November 26, 2007.  Blansky Affirm. ¶¶ 48-52.  Eva Jacobowitz does not address this argument.  The record shows that Eva Jacobowitz declined to testify substantively at her deposition, and invoked her privilege against compelled self-incrimination.  Plaintiff's Statement of Material Facts, Exh. Z (transcript of deposition of Eva Jacobowitz dated November 26, 2007).

The Fifth Amendment to the United States Constitution states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  The Fifth Amendment's protection has been applied to testimony given in civil proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973).

It is well established that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them."  *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).  It is similarly well

established that the testimonial assertion of the Fifth Amendment is not a substitute for relevant

and persuasive evidence.  As the Supreme Court has explained:

> [W]hile the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness . . . declines to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production.

*United States v. Rylander*, 460 U.S. 752, 758 (1983).  And as the Second Circuit notes:

> [A] party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence, . . . and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.

*United States v. Certain Real Property and Premises Known as: 4003-4005 5th Ave., Brooklyn,*

*N.Y.*, 55 F.3d 78, 83 (2d Cir. 1995) (quotation omitted).  Thus, Eva Jacobowitz is not "freed from

adducing proof in support of a burden which would otherwise have been [hers]."  *Id.*

At the same time, courts have found that on a motion for summary judgment, the adverse

inference drawn from a party invoking the Fifth Amendment may not be the sole basis for a

finding of liability.  One court noted:

> [T]he evidence produced by a nonmoving party's silence is not sufficiently weighty to carry a moving party's burden in a motion for summary judgment.  In other words, the plaintiff's motion for summary judgment must stand or fall on the merits of the evidence adduced.

*Fidelity Funding of Cal., Inc. v. Reinhold,* 79 F. Supp. 2d 110, 116 (E.D.N.Y. 1997).  *See SEC v.*

*Global Telecom Servs., L.L.C.,* 325 F. Supp. 2d 94, 109 (D. Conn. 2004) ("[P]laintiff still must

meet its burden of proof, and [d]efendants' silence, alone, does not automatically give rise to

their liability.").

Indeed, while an adverse inference may be drawn at the summary judgment stage of a

proceeding as well as at the trial stage, several courts have declined to do so.  For example, in

20

*Fidelity Funding of California, Inc.*, the court considered whether it was appropriate to draw an adverse inference at the summary judgment stage, and observed:

> The propriety of drawing an inference against the defendants in this action based on their invocation of the privilege is especially problematic in the context of a motion for summary judgment, where a court is admonished to construe all evidence, including the defendants' silence, in a light most favorable to the non-moving party. . . .  "Treating [the defendants'] silence as a separate piece of evidence supporting the . . . motion for summary judgment and drawing inferences against [them] on the basis of that fact seems to be in tension with the ordinary summary judgment rule that all reasonable inferences must be drawn in favor of the nonmovant."  While it is settled law that a trier of fact may draw an adverse inference in a civil action against a party who invokes the Fifth Amendment privilege, the court in deciding this summary judgment motion is in a far different posture than a post-trial trier of fact.

*Fidelity Funding of Cal., Inc.*, 79 F. Supp. 2d at 116-17 (quoting *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 n.7 (7th Cir. 1995)).

And in *In re WorldCom, Inc.*, 377 B.R. 77 (Bankr. S.D.N.Y. 2007), the court noted, "at summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party, despite potential for the ultimate trier of fact to draw an adverse inference from the assertion of Fifth Amendment privileges."  *In re WorldCom, Inc.*, 377 B.R. at 109.  *See Parsons  & Whittemore Enter. Corp. v. Schwartz*, 387 F. Supp. 2d 368, 371-72 (S.D.N.Y. 2005) (citing *Stichting Ter Behartiging v. Philippe S.E. Schrieber*, 407 F.3d 34, 55 (2d Cir. 2005)); *General Motors Acceptance Corp. v. Bartlett (In re Bartlett)*, 154 B.R. 827, 830 (Bankr. D.N.H. 1993).

Accordingly, the Court will not draw an adverse inference from Eva Jacobowitz's assertion of her Fifth Amendment privilege in the context of this summary judgment motion.

<u>The Motion for Summary Judgment</u>

<u>The GFI Transfer – Actual Fraud</u>

21

By his Sixth and Eighth Claims for Relief, the Trustee seeks to avoid and recover the GFI Transfer as a fraudulent transfer made with actual intent to hinder, delay, or defraud.  Complaint ¶¶ 69-72, 75-78.  Under the Sixth Claim for Relief, the Trustee alleges that the GFI Transfer is avoidable under DCL Section 276, and under the Eighth Claim for Relief, the Trustee alleges that the GFI Transfer is avoidable under Bankruptcy Code Section 548(a)(1)(A).  *Id.*  By his Seventh Claim for Relief, the Trustee seeks an award of attorneys' fees under DCL Section 276-a.  Complaint ¶¶ 73-74.

To succeed on the Motion for Summary Judgment on these claims, the Trustee must show that the property transferred was property of Victor Jacobs, the property transferred has value out of which a creditor could have realized a portion of its claim, the property was transferred by Victor Jacobs, and the transfer was made with actual intent to hinder, delay, or defraud Victor Jacobs' creditors.  N.Y. DEBT. & CRED. LAW § 276; 11 U.S.C. § 548(a)(1)(A).  *See Kittay v. Flutie N.Y. Corp. (In re Flutie N.Y. Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004).

### *Whether the Trustee Has Established that the GFI Transfer Was a Transfer of Victor Jacobs' Property*

The Trustee argues that inasmuch as Victor Jacobs was the sole title owner of the Penn Street Property and solely obligated on the GFI Mortgage, the GFI Mortgage proceeds were his property.  Blansky Reply Affirm. ¶ 8.  The Trustee further argues that "[a]bsent [Victor Jacobs'] consent or direction, GFI could not have disbursed the proceeds to any other person."  *Id.*

Eva Jacobowitz argues that the GFI Transfer was not a transfer of property of Victor Jacobs because she received the proceeds directly from GFI, not from Victor Jacobs.  Eva Jacobowitz Objection at 2.

22

The record shows that Victor Jacobs was the sole title owner of the Penn Street Property. Plaintiff's Statement of Material Facts, Exh. A (Deed dated January 10, 1990, conveying the Penn Street Property to Victor Jacobs). Victor Jacobs was also the sole mortgagor on the GFI Mortgage. Plaintiff's Statement of Material Facts, Exh. B (Mortgage dated May 9, 2003). Finally, Victor Jacobs directed that the GFI Transfer be made by GFI to Eva Jacobowitz. Plaintiff's Statement of Material Facts, Exh. C (Loan Settlement Statement dated May 9, 2003).

Accordingly, the Court finds that GFI Transfer was a transfer of Victor Jacobs' property.

*Whether the Trustee Has Established that the GFI Transfer Has Value Out of Which a Creditor Could Have Realized a Portion of Its Claim*

The next element that the Trustee must establish is that the GFI Transfer "has value out of which the creditor could have realized a portion of its claim. . . ." *In re Flutie N.Y. Corp.*, 310 B.R. at 56. The record shows that the GFI Transfer consisted of funds in the amount of $696,975.39. Plaintiff's Statement of Material Facts, Exh. C (Loan Settlement Stated dated May 9, 2003). The record also shows that Congress demanded payment from Victor Jacobs pursuant to the Limited Guarantee. Plaintiff's Statement of Material Facts, Exh. O (Limited Guarantee dated September 4, 2001); Exh. P (Letter dated April 14, 2003, from Congress to the Debtors).

Accordingly, the Court finds that the GFI Transfer consisted of funds which could have been realized by Congress and others who held claims against Victor Jacobs.

*Whether the Trustee Has Established that the GFI Transfer Was Made by Victor Jacobs*

Next, the Trustee must show that the GFI Transfer was made by Victor Jacobs. *See In re Flutie N.Y. Corp.*, 310 B.R. at 56. The record shows that on May 14, 2003, $696,975.39 of the net proceeds of the refinancing of the Penn Street Property were disbursed at Victor Jacobs' direction to an account in the name of Eva Silberstein at European American Bank. Plaintiff's

23

Statement of Material Facts, Exh. C (Loan Settlement Statement dated May 9, 2003); Exh. D

(Wire Letter authorization dated May 14, 2003).

Accordingly, the Court finds that the GFI Transfer was made by Victor Jacobs.

*Whether the Trustee Has Established that the GFI Transfer Was Made with Actual Intent
To Hinder, Delay, or Defraud*

Finally, the Trustee must show the GFI Transfer was made with "actual intent to hinder,

delay, or defraud" Victor Jacobs' creditors.  N.Y. DEBT. & CRED. LAW § 276; 11 U.S.C.

§ 548(a)(1)(A).  The Trustee argues that this element may be established by circumstantial

evidence, through the presence of badges of fraud.  Blansky Affirm. ¶¶ 60-62.  The Trustee

points to several badges of fraud which, he argues, show that a reasonable jury could not find for

Eva Jacobowitz on the question of Victor Jacobs' actual intent to "hinder, delay, or defraud" his

creditors.  Blansky Affirm. ¶¶ 63-77.

Lack or Inadequacy of Consideration  The Trustee argues that the GFI Transfer was

"made without any consideration."  Blansky Affirm. ¶ 71.  The record shows that the net

proceeds of the GFI Transfer were wire transferred into an account in the name of Eva

Silberstein at European American Bank.  Plaintiff's Statement of Material Facts, Exh. D (Wire

Letter authorization dated May 14, 2003).

Family Relationship Between the Parties and Retention of Possession, Benefit, or Use

The Trustee argues that Eva Jacobowitz was the wife of the late Victor Jacobs and, as such,

"there existed a confidential relationship as between the transferor and transferee."  Blansky

Affirm. ¶ 72.  The record shows that Eva Jacobowitz testified that her late husband was Victor

Jacobs.  Plaintiff's Statement of Material Facts, Exh. Z (November 26, 2007 deposition

transcript of Eva Jacobowitz at 5:16-18).  The Trustee argues that, based on the confidential

relationship between Victor Jacobs and Eva Jacobowitz as husband and wife, Victor Jacobs "retained access to these funds through [Eva Jacobowitz]."  Blansky Affirm. ¶ 73.

 <u>Timing and Sequence of the Events</u>  The Trustee argues that the timing and sequence of the events surrounding the GFI Transfer, including, among other things, the pendency of criminal proceedings against Victor Jacobs, the proximity of the GFI Transfer to the demand for payment by Congress, the involuntary bankruptcy filing against Victor Jacobs, and the granting of a confession of judgment to Eurofactors International, support the conclusion that the GFI Transfer was made for the purpose of hindering, delaying, and defrauding Victor Jacobs' creditors.  Blansky Affirm. ¶ 76.

 The record shows that on September 4, 2001, Victor Jacobs and the other Debtors executed the Limited Guarantee in favor of Congress in which they jointly and severally accepted personal liability for $10 million of the debt owed by Allou to Congress.  Plaintiff's Statement of Material Facts,  Exh. O (Limited Guarantee dated September 4, 2001).  On April 9, 2003, five weeks before the GFI Transfer, involuntary bankruptcy cases were filed against Allou by Congress and LaSalle Business Credit, Inc.  Case No. 03-82321, Docket No. 1.  On April 14, 2003, one month before the GFI Transfer, Congress demanded payment from the Debtors pursuant to the Limited Guarantee.  Plaintiff's Statement of Material Facts, Exh. P (Letter dated April 14, 2003, from Congress to the Debtors).  As a result, Victor Jacobs became jointly and severally liable for $10 million of the debt owed by Allou to Congress.  And on the following day, April 15, 2003, Victor Jacobs and the other Debtors confessed judgment in the amount of $3.2 million to Eurofactors International.  Plaintiff's Statement of Material Facts, Exh. Q (Affidavit of Confession of Judgment by the Debtors, sworn to on April 15, 2003).

The record further shows that just over three weeks later and less than a week before the GFI Transfer, on May 9, 2003, Victor Jacobs obtained the GFI Mortgage in the amount of $735,000, from GFI secured by a refinancing of the Penn Street Property.  Plaintiff's Statement of Material Facts, Exh. B (Mortgage dated May 9, 2003).  As part of that transaction, on May 9, 2003, Victor Jacobs signed a Borrower Certification in which he represented that no judgment existed against him which remained unsatisfied at the time, notwithstanding the Confession of Judgment that he signed on April 15, 2003.  Plaintiff's Statement of Material Facts, Exh. R (Borrower Certification signed May 9, 2003).  And on May 14, 2003, the net proceeds of the GFI Mortgage in the amount of $696,975.39, were wire transferred at Victor Jacobs' direction to an account in the name of Eva Silberstein at European American Bank.  Plaintiff's Statement of Material facts, Exh. C (Loan Settlement Statement dated May 9, 2003); Exh. D (Wire Letter authorization dated May 14, 2003).

The Onset of Victor Jacobs' Financial Difficulties  The Trustee argues that the onset of Victor Jacobs' financial and other difficulties also supports the conclusion that the GFI Transfer was made for the purpose of hindering, delaying, and defrauding Victor Jacobs' creditors.  Blansky Affirm. ¶ 66.

The record shows that one month before the GFI Transfer, on April 14, 2003, Congress demanded payment from the Debtors pursuant to the Limited Guarantee, and Victor Jacobs became liable to Congress for $10 million of Allou's debt.  Plaintiff's Statement of Material Facts, Exh. P (Letter dated April 14, 2003, from Congress to the Debtors).  On April 15, 2003, Victor Jacobs and the other Debtors confessed judgment in the amount of $3.2 million to Eurofactors International.  Plaintiff's Statement of Material Facts, Exh. Q (Affidavit of

Confession of Judgment by the Debtors, sworn to on April 15, 2003).  Approximately six weeks after the GFI Transfer, on June 30, 2003, involuntary Chapter 7 petitions were filed against Victor Jacobs and the other Debtors.  Case No. 03-84456, Docket No. 1.

The record also shows that on August 12, 2003, Victor Jacobs and the other Debtors were arrested for, among other charges, bank fraud.  Plaintiff's Statement of Material Facts, Exh. AA (U.S. District Court, Eastern District of New York, Criminal Docket for Case No. 03-MH-01254, Docket Entry dated August 12, 2003).  On June 9, 2004, an indictment was filed against Victor Jacobs and the other Debtors for, among other charges, bank fraud, violations of rules and regulations of the Securities and Exchange Commission, and bribery of a public official.  Plaintiff's Statement of Material Facts, Exh. BB (U.S. District Court, Eastern District of New York, Criminal Docket for Case No. 04-CR-00558-JG, Docket Entry dated June 9, 2004).

On November 22, 2005, Herman Jacobs entered a plea of guilty to conspiracy to commit bank fraud, security fraud and mail fraud, and causing false filings to be made with the Securities and Exchange Commission.  Plaintiff's Statement of Material Facts, Exh. DD (Criminal Cause for Arraignment Pleading, dated November 22, 2005).  On the same day, Jacob Jacobs entered a plea of guilty to causing false filings with the Securities and Exchange Commission.  *Id*.  In his plea allocution, Herman Jacobs testified:

> From the 1990s through part of 2003, I agreed with the other top officers of Allou, as well as others, to defraud the lenders by causing Allou to submit . . . inflated inventory and accounts receivable figures to the lenders in order to increase the funds available to Allou under the line of credit.

Plaintiff's Statement of Material Facts, Exh. EE (Transcript of Criminal Cause for Guilty Plea, dated November 22, 2005, at 29:7-12).  Victor Jacobs passed away before the disposition of the criminal charges against him.  Blansky Affirm. ¶ 30.

The record shows several badges of fraud that support the conclusion that the GFI Transfer was made with an intent to hinder, delay, or defraud Victor Jacobs' creditors.  *See Lippe*, 249 F. Supp. 2d at 374 (citing *Anderson*, 477 U.S. at 255).  These include the lack of consideration, the family relationship between Victor Jacobs and Eva Jacobowitz, and the associated prospect of a retention of control over the property, and the timing of the GFI Transfer, which coincides with Victor Jacobs' increased risk of liability on the Limited Guarantee.

Accordingly, the Court finds that the GFI Transfer was made with actual intent to hinder, delay, or defraud Victor Jacobs' creditors.

<u>*Whether Eva Jacobowitz Has Established a Defense to the Trustee's Claim To Avoid the GFI Transfer*</u>

<u>Eva Jacobowitz's Defense of Reasonably Equivalent Value or Fair Consideration</u>  As discussed above, even where actual intent to defraud has been shown, the DCL and the Bankruptcy Code protect the rights of certain innocent transferees who paid value and received the transferor's property without fraudulent intent.  N.Y. DEBT. & CRED. LAW § 278(2); 11 U.S.C. § 548(c).  *See* pp. 12-13, 18, *supra*.

Eva Jacobowitz claims that she "generally provided consideration and/or reasonably equivalent value for the GFI Transfer."  Eva Jacobowitz Objection at 2.  She argues:

> (1) . . . [she] advanced funds to help purchase, renovate and/or maintain the [Penn Street Property]; (2) [she] advanced funds to pay down the debt owed to Fleet Bank, which debt was guaranteed by Four Jacobs [Victor Jacobs is alleged to have been one of the legal, equitable, or beneficial owners of Four Jacobs] . . . ; (3) [she] advanced funds for the reasonable and necessary living expenses of her family and household; and (4) Victor, as Eva's husband, had a marital obligation to support [her].

Eva Jacobowitz Objection at 2.  She makes these same assertions in response to the Trustee's

28

interrogatories.  Plaintiff's Statement of Material Facts, Exh. V (Defendants' Response to Plaintiff's First Amended Set of Interrogatories pp. 12-13).  These interrogatory responses were signed by Eva Jacobowitz's counsel, not by her.  *Id.*

The Trustee argues that Eva Jacobowitz's "Consideration Argument" is "without merit and factual support."  Blansky Reply Affirm. ¶ 9.  The Trustee argues that her assertion of this defense is procedurally and substantively deficient because:

> Eva failed to allege in her answer that she provided reasonably equivalent value or fair consideration in exchange for the transfers described in the complaint.  Eva did not suggest any such defense until the service of Defendants' Response to Interrogatories dated June 6, 2006, which response was not verified by Eva, but instead signed by her counsel. . . . [A] response to interrogatories signed by Defendants' counsel and unsworn by the Defendants is not a statement in compliance with Fed. R. Civ. P. Rule 56(e) . . . .  Since Defendants' counsel is without knowledge and is not competent to testify concerning the matters contained in the Response to Interrogatories, Eva has failed to raise any triable question of fact as to any alleged consideration.

Blansky Reply Affirm. ¶ 9.

Eva Jacobowitz's argument that she provided fair consideration or reasonably equivalent value does not raise a genuine issue of material fact sufficient to defeat the Trustee's Motion for Summary Judgment for several reasons.

First, she does not offer evidence or authority sufficient to support her argument that she advanced funds to "help purchase, renovate and/or maintain the [Penn Street Property]," or "to pay down the debt owed to Fleet Bank, which debt was guaranteed by Four Jacobs," or that funds were advanced "for the reasonable and necessary living expenses of her family and household."  Eva Jacobowitz Objection at 2.

She also does not provide evidence or authority sufficient to support her argument that the GFI Transfer constituted spousal support or that Victor Jacobs' duty of spousal support gave

29

rise to an antecedent debt, the satisfaction of which would be consideration for the GFI Transfer.

As the court found in *United States v. Mazzeo*, 306 F. Supp. 2d 294 (E.D.N.Y. 2004):

> As a general proposition, under New York law love and affection are inadequate consideration under the [Debtor and Creditor Law]. There is also no basis under New York law to conclude that a husband owes an antecedent debt for the purposes of Section 272's definition of fair consideration *solely* based on the existence of a marital relationship.

*Mazzeo*, 306 F. Supp. 2d at 309 (quotations and citations omitted).

Indeed, as another court has observed, a rule that a marital relationship *necessarily* gives rise to an antecedent debt for spousal support would permit a spouse to shield assets from creditors "with impunity":

> [A]ny spouse could transfer substantial assets to the other spouse and simply call it a transfer in return for consideration and shelter the assets from creditors. There is no such loophole. As the Court of Appeals for the Second Circuit explained in a related context, . . . a potential spouse "could empty his estate with impunity when sued by victims, transfer his property to his fiancee and receive nothing but inchoate interests in return – nothing from which [a creditor] could recover its judgment – and yet enjoy the benefits of the property now nominally owned by his wife. That is the sort of injustice fraudulent conveyance law is designed to prevent."

*In re Manshul Constr. Corp.*, 2000 WL 1228866, at *49 (quoting *HBE Leasing Corp.*, 61 F.3d at 1059).

As the *Mazzeo* court found, "it strains concepts of basic fairness to ask [the court] to conclude, as [a] matter of law, that *any* transfer by a husband to his wife is *automatically* made for fair consideration simply because the husband has an obligation to support his spouse." *Mazzeo*, 306 F. Supp. 2d at 310.

Second, as discussed above, the concept of "fair consideration" under the DCL contains two components, "the exchange of fair value and good faith – and both are required." *Universal*

*Express, Inc.*, 2008 WL 1944803, at *5 (quotation omitted).  N.Y. DEBT. & CRED. LAW § 272.

*See* pp. 14-15, *supra*.  The bona fide purchaser for value defense in Bankruptcy Code Section

548(c) similarly contains two components, value and good faith.  11 U.S.C. § 548(c).

Eva Jacobowitz does not provide evidence or authority sufficient to show that a genuine

issue of fact exists as to her good faith.  *See United States v. Orozco-Prada,* 636 F. Supp. 1537,

1541 (S.D.N.Y. 1986) ("Proof of actual fraudulent intent makes a *prima facie* case and shifts to

the [transferee] the burden of establishing his good faith in the transfer."); *Gredd v. Bear,*

*Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (S.D.N.Y. 2002)

("[S]ection 548(c) designates the transferee's good faith as an *affirmative defense* which may be

raised and proved by the transferee at trial.").

A nonmoving party is required to present "significant probative evidence" that a genuine

issue of fact exists in order to defeat a well-grounded motion for summary judgment.  *Anderson*,

477 U.S. at 249 (quotation omitted).  *See Anderson*, 477 U.S. at 249-50.  Here, Eva Jacobowitz

"was free to raise disputed issues of material fact by providing evidence beyond any supposedly

self-incriminating statements."  *Babitt v. Schwartz (In re Lollipop, Inc.)*, 205 B.R. 682, 689

(Bankr. E.D.N.Y. 1997).  And as noted above, even in the absence of an adverse inference, "a

party who asserts the privilege against self-incrimination must bear the consequence of lack of

evidence."  *Certain Real Property and Premises Known as: 4003-4005 5th Ave., Brooklyn, N.Y.*,

55 F.3d at 83 (quotation omitted).  *See* pp. 18-21, *supra*.

Accordingly, the Court finds that Eva Jacobowitz has not established a defense of

reasonably equivalent value or fair consideration.

<u>*Eva Jacobowitz's Defense of Preclusion*</u>  Eva Jacobowitz argues that the Trustee's failure

to disclose the GFI Transfer on the Statement of Financial Affairs ("SOFA") filed on behalf of

Victor Jacobs, or to amend the SOFA to include the GFI Transfer, precludes him from seeking

any recovery for the GFI Transfer.  Eva Jacobowitz Objection at 1-2.  The Trustee argues that

Eva Jacobowitz did not raise this defense in her Answer, and does not support her position with

legal authority.  Blansky Reply Affirm. ¶ 7.  The Trustee also points to the fact that "the Debtors

asserted their Fifth Amendment privilege against self-incrimination at the initial 341 meeting . . .

and have provided limited documentation concerning their financial affairs during the pendency

of their cases." *Id.*

Eva Jacobowitz does not cite statutory or decisional authority to support her argument

that the Trustee is precluded from seeking to avoid and recover the GFI Transfer on these

grounds.  Nor does any controlling authority suggest that a Chapter 7 trustee's avoidance powers

are limited in this way.  And such a limitation appears to be out of harmony with the broad

powers explicitly granted to a Chapter 7 trustee, as well as the overarching objectives of

recovery and distribution of assets through the Chapter 7 process.  *See, e.g.*, 11 U.S.C. § 704(a).

Accordingly, the Court finds that Eva Jacobowitz has not established a defense of

preclusion.

In sum, the Court concludes that Eva Jacobowitz has not met her burden to "do more than

simply show that there is some metaphysical doubt as to the material facts," or otherwise to

establish a defense to the Trustee's claim to avoid the GFI Transfer.  *Matsushita*, 475 U.S. at

586.

### *Whether the Trustee Has Established that He Is Entitled to Attorneys' Fees Under DCL Section 276-a*

The Trustee seeks to recover attorneys' fees from Eva Jacobowitz under DCL Section

276-a. Complaint ¶¶ 124-25. This section provides for the recovery of attorneys' fees in an action to set aside a transfer made with actual intent to hinder, delay, or defraud. DCL Section 276-a provides:

> In an action . . . brought by a creditor . . . [or] trustee in bankruptcy, . . . to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor . . . [or] trustee in bankruptcy . . . shall recover judgment, the justice . . . presiding at the trial shall fix the reasonable attorney's fees of the creditor . . . [or] trustee in bankruptcy . . . in such action . . . and the creditor . . . [or] trustee in bankruptcy shall have judgment therefor against the debtor and the transferee who are defendants in addition to the other relief granted by the judgment.

N. Y. DEBT. & CRED. LAW § 276-a.

To succeed on his claim for attorneys' fees, the Trustee must establish that the GFI Transfer was *made* by Victor Jacobs, and *received* by Eva Jacobowitz, with the *actual intent* to hinder, delay, or defraud his creditors. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (finding that Section 276-a requires an "explicit finding of actual intent to defraud" by both the transferor and the transferee); *Ackerman v. Kovac (In re All American Petroleum Corp.)*, 259 B.R. 6, 19 (Bankr. E.D.N.Y. 2001) ("Under New York law, an award of attorneys' fees in a fraudulent conveyance action is not appropriate in the absence of a showing of actual intent on the part of the defendant.")

As discussed above, the record shows that several badges of fraud support the conclusion that the GFI Transfer was made by Victor Jacobs with the actual intent to hinder, delay, or defraud his creditors. *See* pp. 23-27, *supra*. But the record does not show that the GFI Transfer was received by Eva Jacobowitz with the actual intent to hinder, delay, or defraud creditors.

Accordingly, the Court finds that the Trustee has not met his initial burden of

33

demonstrating that "there is no genuine dispute of material fact to be decided with respect to [an] essential element" of this claim. *Smith v. Goord,* 2008 WL 902184, at *4.

*           *           *

For these reasons, and based on the entire record, the Court concludes that the Trustee is entitled to summary judgment on the Sixth and Eighth Claims for Relief seeking avoidance and recovery of the GFI Transfer as actually fraudulent under DCL Section 276 and Bankruptcy Code Section 548(a)(1)(A), and that the Trustee is not entitled to summary judgment on the Seventh Claim for Relief seeking an award of attorneys' fees under DCL Section 276-a.

The GFI Transfer – Constructive Fraud

By his Third, Fourth, Fifth, and Ninth Claims for Relief, the Trustee seeks to avoid and recover the GFI Transfer as a constructive fraudulent transfer under DCL Sections 273, 274, and 275, and Bankruptcy Code Section 548(a)(1)(B).[6]  Complaint ¶¶ 60-68, 79-81.

To succeed on the Motion for Summary Judgment on these claims, the Trustee must show that the property transferred was property of Victor Jacobs, that the property was transferred for less than fair consideration or reasonably equivalent value, and that the transfer occurred while Victor Jacobs was insolvent or that the transfer rendered him insolvent. *See* pp. 13-16, 17-18, *supra*.

*Whether the Trustee Has Established that the GFI Transfer Was a Transfer of Property of Victor Jacobs*

------

[6]  The Trustee does not argue the Motion for Summary Judgment as to the Fourth and Fifth Claims for Relief, which seek avoidance and recovery of the GFI Transfer under DCL Sections 274 and 275.  *Cf.* Blansky Affirm. ¶¶ 78-94.  As a result, the Court does not address these claims.

As discussed above, the Trustee has established that the GFI Transfer was a transfer of property of Victor Jacobs. *See* p. 22, *supra*.

### *Whether the Trustee Has Established that the GFI Transfer Was Made for Less than Fair Consideration or Reasonably Equivalent Value*

As discussed above, the GFI Transfer was an intra-family transfer, and the facts concerning the nature and extent of the consideration paid, if any, are within the control of Eva Jacobowitz as the transferee, not the Trustee. For these reasons, the burden of persuasion shifts from the Trustee to Eva Jacobowitz. *Hansel*, 999 F. Supp. at 699 (citing *McCombs*, 30 F.3d at 323); *Gelbard v. Esses*, 96 A.D.2d at 576. *See* pp. 15-16, *supra*. As a result, Eva Jacobowitz must show that there is a genuine issue of material fact as to whether fair consideration or reasonably equivalent value was given in exchange for the GFI Transfer. *See Hansel*, 999 F. Supp. at 700 (finding that a taxpayer's transfers to family members were fraudulent transfers where defendants did not carry their burden to show that fair consideration was given). *See also* 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.13[1] (3d ed. 2008) ("[T]he substantive trial burden affects the nonmovant's procedural burdens. If the nonmovant is a defendant, it may meet its response burden by introducing material that prevents the . . . movant from being entitled to judgment as a matter of law.").

As discussed above, Eva Jacobowitz has not established there is a genuine issue of material fact sufficient to defeat the Trustee's Motion for Summary Judgment with respect to her defenses that she provided fair consideration or reasonably equivalent value in connection with the GFI Transfer. *See* pp. 27-31, *supra*. That is, she has not come forward with evidence or authority sufficient to show a genuine issue of fact as to whether she advanced funds to purchase, renovate, or maintain the Penn Street Property, or to reduce the mortgage debt on the

property, or to pay expenses related to the property. *See* pp. 27-29, *supra*. Nor has she come forward with evidence or authority sufficient to show a genuine issue of fact as to whether she provided consideration for the GFI Transfer in the form of discharging a duty of spousal support. *See* pp. 29-31, *supra*.

Accordingly, the Court finds that the Trustee has established that the GFI Transfer was made for less than fair consideration or reasonably equivalent value.

### *Whether the Trustee Has Established that Victor Jacobs Was Insolvent when the GFI Transfer Was Made or Was Rendered Insolvent by the Transfer*

The final element that the Trustee must establish to succeed on his constructive fraudulent transfer claims is that Victor Jacobs was insolvent when the GFI Transfer was made, or was rendered insolvent by the transfer. N.Y. DEBT. & CRED. LAW § 273; 11 U.S.C. § 548(a)(1)(B)(ii)(I). Under the DCL, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." N.Y. DEBT. & CRED. LAW § 271(1). The Bankruptcy Code defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, . . . ." 11 U.S.C. § 101(32). "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 961 (2007).

Under New York law, there is a presumption of insolvency where the debtor makes a transfer without fair consideration. As the Second Circuit has noted:

> [T]here is a rule of long standing in the New York court that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the

absence of some proof to the contrary, that he was then insolvent.

*Feist v. Druckerman,* 70 F.2d 333, 334-35 (2d Cir. 1934). *See In re Manshul Constr. Corp.*, 2000 WL 1228866, at *53. The burden of persuasion then shifts to the transferee to come forward with proof of the transferor's solvency. *Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007).

As discussed above, the Trustee has established that the GFI Transfer was made for less than fair consideration or reasonably equivalent value. *See* pp. 27-31, 34-35, *supra*. As a result, the burden of persuasion as to Victor Jacobs' solvency at the time of the GFI Transfer shifts to Eva Jacobowitz.

At the outset, Eva Jacobowitz does not offer evidence or authority sufficient to show that there is a genuine issue of material fact as to whether Victor Jacobs was solvent at the time of the GFI Transfer. *See Hansel*, 999 F. Supp. at 700.

In addition, the Trustee argues that "there are sufficient facts to demonstrate that Victor [Jacobs] . . . [was] insolvent on the [date] of the [GFI Transfer] or rendered insolvent as a result." Blansky Affirm. ¶ 87. As discussed above, on September 4, 2001, Victor Jacobs and others executed the Limited Guarantee in favor of Congress in which he assumed personal liability for $10 million of Allou's debt to Congress. Plaintiff's Statement of Material Facts, Exh. O (Limited Guarantee dated September 4, 2001). On April 14, 2003, one month before the GFI Transfer, Congress demanded payment on the Limited Guarantee, and Victor Jacobs and the other Debtors became jointly and severally liable to Congress for $10 million. Plaintiff's Statement of Material Facts, Exh. P (Letter dated April 14, 2003, from Congress to the Debtors). And on the following day, April 15, 2003, Victor Jacobs and the other Debtors confessed

37

judgment in the amount of $3.2 million to Eurofactors International.  Plaintiff's Statement of Material Facts, Exh. Q (Affidavit of Confession of Judgment by the Debtors, sworn to on April 15, 2003).  *See* pp. 3-4, *supra*.

The Trustee also argues that the Debtors, including Victor Jacobs, owned "significant stakes in the Allou entities" but "[w]hile the publicly traded Allou entity appeared to be solvent in the false filings made with the Securities and Exchange Commission, it was not."  Blansky Affirm. ¶ 92.  As a result, the Trustee argues that the "Debtors' interest in the Allou entities were without any legitimate value."  *Id*.  And the Trustee argues that "[a]s of the date of Congress' demand for payment [on the Limited Guarantee], [the Debtors'] assets were insufficient to meet the $10 million obligation of the Debtors under the [Limited Guarantee]."  Blansky Affirm. ¶ 93.

Accordingly, the Court finds that Eva Jacobowitz has not established that there is a genuine issue of material fact sufficient to overcome the presumption of Victor Jacobs' insolvency.  And separately, the Trustee has established that Victor Jacobs was insolvent at the time of the GFI Transfer or was rendered insolvent by the transfer.

*          *          *

For these reasons, and based on the entire record, the Court concludes that the Trustee is entitled to summary judgment on the Third and Ninth Claims for Relief seeking avoidance and recovery of the GFI Transfer as constructively fraudulent under DCL Section 273 and Bankruptcy Code Section 548(a)(1)(B).

The GFI Transfer - Turnover and Accounting

By his First Claim for Relief, the Trustee seeks turnover and an accounting of the funds comprising the GFI Transfer under Bankruptcy Code Sections 541 and 542.

> Bankruptcy Code Section 542 provides:
>
> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

To succeed on the Motion for Summary Judgment on this claim, the Trustee must show that the subject property is property of the estate, that it is in the "possession, custody, or control" of Eva Jacobowitz, that he can use it in accordance with Bankruptcy Code Section 363 or that Victor Jacobowitz can exempt it under Section 522, and that it has more than an "inconsequential value" to the Debtor's estate. 11 U.S.C. § 542(a). *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 206 (1983).

As discussed above, the Trustee has established that the GFI Transfer was a transfer of property of Victor Jacobs. *See* pp. 22, *supra*. The Trustee has also shown that the funds comprising the GFI Transfer were transferred to Eva Jacobowitz by wire transfer on May 14, 2003, to an account held solely in her name, and for that reason, came into her possession, custody, or control. *See* Plaintiff's Statement of Material Facts, Exh. D (Wire Letter authorization dated May 14, 2003).

As also discussed above, the Trustee has established that the GFI Transfer has value out of which a creditor could have realized a portion of its claim. *See* pp. 22-23, *supra*. For substantially the same reasons, the Trustee has established that the GFI Transfer is property that he may use, sell, or lease under Section 363 in connection with the administration of Victor Jacobs' bankruptcy estate. Finally, it is plain that the GFI Transfer has more than an

"inconsequential value" to the estate.

For these reasons, and based on the entire record, the Court concludes that the Trustee is entitled to summary judgment on the First Claim for Relief seeking turnover and an accounting of the GFI Transfer under Bankruptcy Code Sections 541 and 542.

The $5,000 Transfer and the $20,000 Transfer – Actual Fraud

By his Twenty-Third Claim for Relief, the Trustee seeks to avoid and recover the $5,000 Transfer and the $20,000 Transfer as fraudulent transfers made with actual intent to hinder, delay, or defraud under DCL Section 276.  By his Twenty-Fourth Claim for Relief, the Trustee seeks an award of attorneys' fees under DCL Section 276-a.

To succeed on the Motion for Summary Judgment on his fraudulent transfer claim, the Trustee must show that the property transferred was property of Victor Jacobs, the property transferred has value out of which a creditor could have realized a portion of its claim, the property was transferred by Victor Jacobs, and the transfer was made with the actual intent to hinder, delay, or defraud Victor Jacobs' creditors.  N.Y. DEBT. & CRED. LAW § 276; *In re Flutie N.Y. Corp.*, 310 B.R. at 56.  *See* pp. 11-13, *supra*.  To succeed on his claim for attorneys' fees, the Trustee must additionally show that Victor Jacobs made the transfers, and Eva Jacobowitz received the transfers, with the actual intent to hinder, delay, or defraud his creditors.  *See* pp. 33-34, *supra*.

### *Whether the Trustee Has Established that the $5,000 Transfer and the $20,000 Transfer Were Transfers of Victor Jacobs' Property*

The Trustee argues that the $5,000 Transfer and the $20,000 Transfer were property of Victor Jacobs, as reflected in the checks used to make them.  Blansky Affirm. ¶ 54.

Eva Jacobowitz argues that since "both [the $5,000 and the $20,000] checks were issued

from a joint bank account in the name of both Eva and Victor . . . Eva has an ownership interest

as to all funds held in her joint account" and "she has the right to receive the proceeds of the

checks." Eva Jacobowitz Objection at 3. For these reasons, she argues, these transfers were not

transfers of Victor Jacobs' property. *Id.* Eva Jacobowitz also argues that she "generally

provided consideration and/or reasonably equivalent value" for these transfers. Eva Jacobowitz

Objection at 1-2.

The ownership and payment of funds from joint bank accounts is governed by New

York's Banking Law. Section 675(a) of the Banking Law provides:

> When a deposit of cash, securities, or other property has been made or shall
> hereafter be made in or with any banking organization . . . transacting business in
> this state, . . . in the name of such depositor . . . and another person and in form to
> be paid or delivered to either, or the survivor of them, such deposit . . . and any
> additions thereto made, by either of such persons after the making thereof, shall
> become the property of such persons as joint tenants and the same, together with
> all additions and accruals thereon, shall be held for the exclusive use of the
> persons so named, and may be paid or delivered to either during the lifetime of
> both or to the survivor after the death of one of them, and such payment or
> delivery and the receipt . . . of the one to whom such payment or delivery is made,
> shall be a valid and sufficient release and discharge to the banking organization
> . . . for all payments or deliveries made on account of such deposit . . . .

N.Y. BANKING LAW § 675(a).

The deposit of funds into a joint account owned by joint tenants "shall, in the absence of

fraud or undue influence, be prima facie evidence . . . of the intention of both depositors . . . to

create a joint tenancy and to vest title to such deposit . . . in such survivor." N.Y. BANKING LAW

§ 675(b). "The statutory presumption is triggered by the language that appears on the bank

documents establishing that the [depositors] are joint tenants with the right of survivorship."

*Matter of the Estate of Anne M. Costantino*, 31 A.D.3d 1097, 1099, 818 N.Y.S.2d 394, 395

(App. Div. 4th Dep't 2006).

41

New York courts have observed that "[t]he presumption of a joint tenancy created by [Section 675] can be rebutted by evidence showing that the depositor established the account for convenience and not with the intention of conferring a present beneficial interest . . . or by proving undue influence, fraud, or lack of capacity." *In the Matter of the Estate of Marion T. Fayo*, 7 A.D.3d 795, 796, 776 N.Y.S.2d 855, 856 (App. Div. 2d Dep't 2004) (quotations and citations omitted). And "[u]nless rebutted the legal presumption that a non-debtor, co-tenant retains one-half interest in the joint account remains." *Velocity Invs., LLC/Citibank v. Astoria Federal Savings & Loan*, 2006 WL 2035891, at *2 (Dist. Ct. Nassau Cty. 2006).

The record shows that the $5,000 Transfer and the $20,000 Transfer were made by checks drawn on an account at Amalgamated Bank of New York and that the checks bear the names of Victor Jacobs and Eva Jacobowitz as account holders. Plaintiff's Statement of Material Facts, Exh. M (check no. 248 ($5,000)); Exh. N (check no. 4456 ($20,000)). The record also shows that the checks bear the signature of Eva Jacobowitz. *Id*. This is sufficient to establish that genuine issues of material fact exist as to whether the $5,000 Transfer and the $20,000 Transfer were transfers of Victor Jacobs' property. These issues include, among others, whether the Amalgamated Bank of New York account was established in compliance with Section 675(a) of the Banking Law. They also include whether the statutory presumption of joint tenancy applies to the account and, if it does, whether at the time of the transfer, the funds transferred from the account were property of Victor Jacobs or, alternatively, whether all or part of the funds transferred from the account were the property of Eva Jacobowitz.

Accordingly, the Court finds that the Trustee has not established that there is no genuine issue of material fact with respect to a necessary element of this claim, that is, whether the

42

$5,000 Transfer and the $20,000 Transfer consisted solely of Victor Jacobs' property. *See Anderson*, 477 U.S. at 250.

For these reasons, and based on the entire record, the Court concludes that the Trustee is not entitled to summary judgment on the Twenty-Third Claim for Relief seeking avoidance and recovery of the $5,000 Transfer and the $20,000 Transfer as actually fraudulent under DCL Section 276. For the same reasons, the Court also concludes that the Trustee is not entitled to summary judgment on the Twenty-Fourth Claim for Relief seeking attorneys' fees.[7]

The $5,000 Transfer and the $20,000 Transfer – Constructive Fraud

By his Twentieth, Twenty-First, and Twenty-Second Claims for Relief, the Trustee seeks to avoid and recover the $5,000 Transfer and the $20,000 Transfer as constructive fraudulent transfers under DCL Sections 273, 274, and 275. To succeed on the Motion for Summary Judgment on these claims, the Trustee must show that the property transferred was property of Victor Jacobs, the transfer was made without fair consideration, and:

> the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; . . . the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or . . . the transferor believes that it will incur debt beyond its ability to pay, DCL § 275.

*In re Sharp Int'l Corp.*, 403 F.3d at 53. *See* N.Y. DEBT. & CRED. LAW §§ 273, 274, 275.

As discussed above, the Trustee has not established that there is no genuine issue of material fact with respect to a necessary element of this claim, that is, whether the $5,000

---

[7] Inasmuch as the Court finds that the Trustee has not met his burden with respect to an essential element of these claims, that is, whether the $5,000 Transfer and the $20,000 Transfer consist of transfers of Victor Jacobs' property, the Court does not address whether the Trustee has met his burden with respect to the remaining elements of these claims.

Transfer and the $20,000 Transfer consisted solely of Victor Jacobs' property. *See* pp. 40-43, *supra*. For the same reasons, the Trustee has not established that there is no genuine issue of material fact with respect to a necessary element of this claim, that is, whether the $5,000 Transfer and the $20,000 Transfer consisted solely of Victor Jacobs' property.

For these reasons, and based on the entire record, the Court concludes that the Trustee is not entitled to summary judgment on the Twentieth, Twenty-First, and Twenty-Second Claims for Relief seeking avoidance and recovery of the $5,000 Transfer and the $20,000 Transfer as constructively fraudulent under DCL Section 273, 274, and 275.

The $5,000 Transfer and the $20,000 Transfer – Turnover

By his Nineteenth Claim for Relief, the Trustee seeks turnover and an accounting of the $5,000 Transfer and the $20,000 Transfer under Bankruptcy Code Sections 541 and 542.

To succeed on the Motion for Summary Judgment on this claim, the Trustee must show that these funds are property of the estate, that they are in the "possession, custody, or control" of Eva Jacobowitz, that he can use the funds in accordance with Bankruptcy Code Section 363 or that Victor Jacobowitz can exempt them under Section 522, and that the funds have more than an "inconsequential value" to the Debtor's estate. 11 U.S.C. § 542(a). *See* pp. 38-39, *supra*.

That is, an essential element of the Trustee's claim for turnover is that the $5,000 Transfer and the $20,000 Transfer were Victor Jacobs' property on the date of the bankruptcy filing and, as a result, became property of his bankruptcy estate under Bankruptcy Code Section 541(a)(1).

As discussed above, the Trustee has not established that there is no genuine issue of material fact with respect to a necessary element of this claim, that is, whether the $5,000

Transfer and the $20,000 Transfer consisted solely of Victor Jacobs' property. *See* pp. 40-43, *supra*.

For these reasons, and based on the entire record, the Court concludes that the Trustee is not entitled to summary judgment on the Nineteenth Claim for Relief seeking turnover and an accounting of the $5,000 Transfer and the $20,000 Transfer under Bankruptcy Code Sections 541 and 542.

## Conclusion

For the reasons stated herein, the Trustee's Motion for Summary Judgment against Eva Jacobowitz on the First, Third, Sixth, Eighth, and Ninth Claims for Relief is granted. In all other respects, the Motion for Summary Judgment is denied. An order in accordance with this Memorandum Decision will be entered simultaneously herewith.

Dated: Brooklyn, New York
       August **26**, 2008


       *s/Elizabeth S. Stong*
       ELIZABETH S. STONG
       UNITED STATES BANKRUPTCY JUDGE